**CONTINENTAL MOTION PICTURES, a Panamanian corporation, Plaintiff,**

v.

**ALLSTATE FILM COMPANY, a Nevada corporation; Len Turner, Defendants.**

**ALLSTATE FILM COMPANY, a Nevada corporation, Counter-Claimant,**

v.

**CONTINENTAL MOTION PICTURES INC., a Panamanian corporation, Continental Service Organization, Inc., a/k/a American Cinema Services, Inc., a California corporation, Hans Eduardo Sarlui, an individual, Counter-Defendants.**

**No. CV 83–2858–ER (MCX).**

United States District Court, C.D. California.

May 3, 1984.

Alan Arnold, Wolver & Wolver, Los Angeles, Cal., for plaintiff.

Arthur J. Pollock, Los Angeles, Cal., for defendants.

## ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

RAFEEDIE, District Judge.

### I. INTRODUCTION

Defendants Len Turner ("Turner") and All State Film Company ("All State") seek to dismiss plaintiff's complaint[1] for breach of contract, fraud, and negligent misrepresentation on the ground that the Court allegedly lacks diversity jurisdiction[2] over this action because defendant Turner is a citizen of California and defendants allege plaintiff Continental Motion Pictures ("Continental") has a dual corporate citizenship including a principal place of business in Los Angeles. Defendants also claim that the count for negligent misrepresentation is barred by the State's statute of limitations.

The defendants' first basis for dismissal is that diversity does not exist because the plaintiff as a corporation has dual citizenship under Section 1332(c), including its place of incorporation and its principal place of business. Defendants argue on what appears to be circumstantial evidence that the plaintiff has a principal place of business in the Los Angeles area. If this allegation were true and Section 1332(c) applies to alien corporations, diversity jurisdiction would be defeated.

Plaintiff counters that 28 U.S.C. Section 1332(c)'s dual citizenship of corporations does not apply to *alien* corporations. Plaintiff further argues that even if Section 1332(c) were held to be applicable, plaintiff does not have a principal place of business in this district, though plaintiff concedes that some portion of its worldwide business is conducted in this district.

---

1. The complaint filed on April 5, 1983 seeks compensatory damages of $177,000 for alleged breach of written and oral contracts and for breach of warranty. Plaintiff also seeks no less than $427,000 for the alleged fraud and negligent misrepresentations of the defendants.

2. Diversity jurisdiction is alleged under Section 1332(a)(2) in that the plaintiff is an alien corporation incorporated in Panama and the defendants are citizens of the United States.

Defendants' second argument is that California Code of Civil Procedure Section 340(3) provides a one-year statute of limitations for negligence actions such as this. Defendants argue that any negligence occurred on or before June 26, 1981, the date on which the contract was entered. Defendants argue that the action which was filed on May 5, 1983 is therefore barred under Section 340(3).

Plaintiff filed a Supplemental Memorandum of Points and Authorities regarding the applicability of Cal.Civ.Pro. Code § 340(3) and argued that this section applies only to enumerated intentional torts and negligent acts leading to the death or injury of a person. Section 339(1), cited to the Court as the controlling section, provides a two-year statute of limitations. Plaintiff points to the date that the contract was signed, June 26, 1981, as the relevant date. This date is within the two years of the date on which the complaint was filed.

For the reasons set out below, the defendants' motion to dismiss is denied in its entirety without prejudice.

## II. ANALYSIS

### A. *Diversity Jurisdiction*

Section 1332(a)(2) provides diversity jurisdiction in this Court for disputes between citizens of a state and citizens of a foreign state. Under this section, this Court would have jurisdiction over this complaint. Defendants argue, however, that under Section 1332(c), all corporations, even alien corporations, have two places of citizenship. Defendants further argue that a corporations' principal place of business under Section 1332(c) means a corporation's principal place within the United States.

This is an uncertain area of the law. The traditional view is that the enactment of Section 1332(c) in 1958, which provides for the dual citizenship of corporations, has no effect on foreign corporations and their principal places of business need not be considered. Thus, an alien corporation un-

der the traditional view has a single place of citizenship which is the foreign state in which it is incorporated. 6J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice.* ¶ 0.75[3] (2d ed. 1981) ("while the question is not entirely free of doubt, the status of alien corporations is probably unaffected by [the] amendatory Act."); 13 C. Wright, A. Miller and K. Graham, Federal Practice and Procedure, Section 3628 (1975).

### 1. *The Traditional View*

The first, and leading, case to consider the applicability of Section 1332(c) to alien corporation was *Eisenberg v. Commercial Union Assurance Co.,* 189 F.Supp. 500 (S.D.N.Y.1960) *Eisenberg* presented a New York citizen suing a corporation incorporated in Great Britain. The corporation's principal place of business in the United States was New York. Thus, if the court applied Section 1332(c), diversity could be defeated.[3] The court rejected the defendant's argument that diversity was defeated and stated the rule many courts have adopted:

> Defendant's position is that it has its principal place of business in the State of New York and that therefore, under the express terms of subdivision (c), it is to be deemed a citizen of New York and there is no diversity of citizenship between it and plaintiff New York citizen.

> It is to be noted that the statute differentiates between States of the United States and foreign states by the use of a capital S for the word when applied to a State of the United States. Subdivision (c), therefore, in dealing with the *place of incorporation* refers only to a corporation incorporated in a State of the United States. When subdivision (c) goes on to deal with *principal place of business* it refers to the same corporation and thus only to a corporation incorporated in a State of the United States. The subdivision is not susceptible of the construction as if it read "all corporations shall be

---

**3.** For diversity jurisdiction to have been defeated, the Court would have had to read Section 1332(c) as conferring citizenship on the corporation in its principal place of business in the United States, not its principal place of business in the world. *See infra* pages 70.

deemed citizens of the States by which they have been incorporated and of the States where they have their principal places of business." Unless a corporation is incorporated by a State of the United States it will not be deemed a citizen of the State where it has its principal place of business.

500 F.Supp. at 501–02.

Thus, for diversity purposes, under the traditional view, an alien corporation has a single citizenship—the place of its incorporation.[4]

The plaintiff argues that the Ninth Circuit's view conforms with *Eisenberg* and cites *Zurich Insurance Co. v. Sigourney*, 278 F.2d 826 (9th Cir.1960). In *Zurich*, the Ninth Circuit was presented with an Oregon plaintiff suing his former employer and its insurer. The employer was an Illinois corporation and the insurer was a Swiss corporation. The Court concluded without analysis that diversity was proper:

> Jurisdiction of the district court was properly based upon diversity of citizenship. Appellee Sigourney is a citizen and resident of the State of Oregon. Appellant Mack Trucks, Inc., is an Illinois corporation, and appellant Zurich Insurance Company is a Swiss corporation.

*Id.* at 828. The court did not consider the principal place of business for either corporation.[5]

No court has relied on this portion of *Zurich*. Indeed, a later Northern District decision required a showing of the principal place of business of an alien corporation in order to ascertain whether diversity jurisdiction properly could be asserted. In *Stenhouse v. Jacobson*, 193 F.Supp. 694,

695–96 (N.D.CA.1961), the court dismissed a complaint with leave to amend for failure to allege the principal place of business of defendant corporations established by act of the British Parliament:

> Plaintiff must set forth affirmatively not only the state by which these corporations have been incorporated, but also the state where each of them has its principal place of business (See *Brandt v. Bay City Super Market*, D.C., 182 F.Supp. 937; *Pasternack v. Dalo*, D.C., 17 F.R.D. 420; and *Cameron v. Hodges*, 127 U.S. 322, 8 S.Ct. 1154, 32 L.Ed. 132).

The *Stenhouse* case is often cited as representing the alternative or minority view of the impact of Section 1332(c) on alien corporations. Neither of the cases relied upon by *Stenhouse*, however, involved an *alien* corporation; rather, *Brandt* and *Pasternak* dealt with failure to allege the principal place of business for *domestic* corporations and did not address the issue of the impact on alien corporations. The *Cameron* case predates the 1958 amendment and therefore could not have construed Section 1332(c). Thus, while the Ninth Circuit may not have intended to adopt any position as to the applicability of Section 1332(c) in its *Zurich* decision, *Stenhouse* does not provide persuasive reasoning for rejecting the traditional rule proposed by *Eisenberg*.

### 2. *The Emerging Rule*

■ *Eisenberg*, however, admitted that it might be incorrect if its view that Section 1332(c) did not apply to alien corporations and presented an alternative rationale for its denial of the motion to dismiss. The alternative rationale, which has been receiving increased support from courts

---

**4.** The *Eisenberg* view has been impliedly adopted by the 10th Circuit (*Newfoundland American Insurance Co. v. Suesz*, 289 F.2d 694, 695 (10th Cir.1961) and 2d circuit (*Eck v. United Arab Airlines, Inc.*, 360 F.2d 804, 806 (2d Cir. 1966). Numerous cases in the Southern District of New York have adopted the rule as well. *See Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 477 F.Supp. 615 (S.D.N.Y.1979); *Hercules Inc. v. Dynamic Export Corp.*, 71 F.R.D. 101 (S.D.N.Y.1976); *Union Marine & General Insurance Co. v. American Export Lines, Inc.*, 274 F.Supp. 123 (S.D.N.Y.1966); *Tsakonites v.*

*Transpacific Carriers Corp.*, 246 F.Supp. 634 (S.D.N.Y.1965), *aff'd*, 368 F.2d 426 (2d Cir.) *cert. denied*, 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 434.

**5.** The district court's judgment was entered in April 1959; however, there is no indication that the court considered Section 1332(c)—which was added in 1958—in its analysis. The Circuit did not address whether the 1958 amendment applied.

and commentators, is that if an alien corporation is to be deemed a citizen of its principal place of business, Section 1332(c) means the corporation's principal place of business *anywhere in the world, not merely within the United States.*[6] For the reasons set forth by *Eisenberg* and other courts that have considered the question, this Court adopts *Eisenberg's* alternative rationale. *Eisenberg* presented the following rationale for applying Section 1332(c) to alien corporations and reading the principal place of business to be worldwide:

> [T]he purpose of the amendment which made a corporation a citizen of the State where it had its principal place of business as well as of the state where it was incorporated was to reduce the number of cases which would come to the Federal courts under the diversity jurisdiction. *Hughes v. United Engineers & Constructors, Inc.*, D.C.S.D.N.Y., 178 F.Supp. 895. Even if, however, the amendment carried out this purpose by taking away from all foreign state corporations whose principal place of business was within the State, as well as all State corporations whose principal place of business was within the State, the right of removal of a case brought by a resident of that State, it was not the purpose of the amendment to abandon the protection from local prejudice against outsiders as the reason for diversity jurisdiction. It is a fair inference that a corporation which has located its principal place of business in a State has adopted that State as its actual residence and will not be subjected to prejudice against outsiders. If a British corporation has located its principal place of business outside of

the United States, however, and has set up two branches in the United States, one in Chicago and one in New York, and the one in New York is merely its principal place of business *in the United States*, no inference can be legitimately drawn from those facts that it has adopted New York as its actual residence. Its contact with New York may be so slight that it is still an outsider there. On the other hand, if a Bahaman corporation, for example, has located its principal place of business in New York, the inference is legitimate that it has adopted New York as its actual residence and that it is no longer entitled to be considered an outsider and to deserve the protection accorded outsiders.

*Eisenberg*, 189 F.Supp. at 502.

Thus, under the emerging view, if Continental is incorporated in Panama and has its principal place of business in Los Angeles, Continental would be deemed a citizen of California, as well as of Panama, for diversity purposes.

The first court to follow *Eisenberg's* alternative rationale was *Southeast Guaranty Trust Co. v. Rodman & Renshaw, Inc.*, 358 F.Supp. 1001, 1007 (N.D.Ill.1973). *Southeast* and the courts that have followed it have rejected *Eisenberg's* technical argument[7] for holding that Section 1332(c) did not apply to alien corporations, recognizing that the arguments supporting dual citizenship for domestic corporations apply with equal force to alien corporations.

> Congress was endeavoring to define in which states *in the United States* a corporation would be deemed a citizen for purposes of diversity jurisdiction. Con-

---

6. Because the defendant in *Eisenberg* had its principal place of business in London, the court had diversity jurisdiction even if Section 1332(c) applied to alien corporations.

There is dictum in *Sansone v. Ocean Acc. & Guar. Corp.*, 228 F.Supp. 554 (E.D.La.1964) to the effect that the principal place of business in the United States will serve as the place of citizenship of the corporation. However, the court in *Grimandi v. Beech Aircraft Corp.*, 512 F.Supp. 764 (D.C.Kan.1981), well-distinguished this case from the present action. The *Grimandi* court also analyses the section in Prof.

Moore's treatise which suggests that principal place of business should be considered in this context. Prof. Moore, it is pointed out, was making the suggestion in the context of an *American corporation with its principal place of business overseas.* See 512 F.Supp. at 773–74.

7. Eisenberg argued that because the first half of Section 1332(c), dealing with the state of incorporation, did not apply to foreign corporations, neither did the second half, dealing with the principal place of incorporation.

gress intended to limit the diversity jurisdiction of the federal courts to those out-of-state citizens who should be free of local bias. Congress decided that there was no need for federal court protection of a corporation with its principal place of business in the same state in which its legal adversary is a citizen, even though it is incorporated elsewhere. *Jerguson v. Blue Dot Investment, Inc.,* 659 F.2d 31, 35 (5th Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982).

Having adopted the rule that if the worldwide principal place of business of a corporation is in the United States, the corporation has, for diversity purposes, two places of citizenship under Section 1332(c), the Court next must determine whether, as a factual matter, Continental has its principal place of business within California, thus destroying diversity jurisdiction.

■ Plaintiff has submitted several affidavits which indicate that its worldwide principal place of business is in *Panama.* Thus, while it is proper to look to the principal place of business of an alien corporation when that place is within the United States, the plaintiff here does not have a principal place of business in the same state as any of the defendants and therefore diversity is not defeated. Defendants have not objected to any of the sworn affidavits which have been submitted. The defendants' motion to dismiss for lack of subject matter is denied.

B. *Statute of Limitations*

■ Plaintiff is correct that the proper statutory provision is Cal.Civ.Pro.Code Section 339.1. That section provides for a two-year statute of limitations that begins to run when the loss has been discovered. Thus, the action accrued sometime *after* the contract was signed and the action is therefore timely filed. The defendants' motion to dismiss on account of the time bar is also denied.