**DAVID K. LINDEMUTH CO., a California corporation; Giroux Tool and Engineering, Inc., a California corporation; Research Machine Development, Inc., a California corporation, Plaintiffs,**

v.

**SHANNON FINANCIAL CORPORATION, a California corporation; SFC Leasing, Inc., a California corporation; OTI, Inc., a foreign corporation; Pengo Industries, Inc., a foreign corporation; NDT Systems, Inc., a foreign corporation; ITT Industrial Credit Company, a foreign corporation; and Michael McCune, Defendants.**

**No. C–86–1007 SAW.**

United States District Court,
N.D. California.

May 7, 1987.

Robert A. Randick, Jr., Spinetta, Randick & O'Dea, Oakland, Cal., for plaintiffs.

Kenneth G. Hausman, Bernard A. Burk, Pauline E. Calande, Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, Cal., for defendants.

## ORDER

WEIGEL, District Judge.

The motion of defendants Shannon Financial Corporation, SFC Leasing, Inc., and Micael McCune for summary judgment came on for hearing May 7, 1987. The Court has considered the briefs, arguments of counsel, and the entire record.

## FACTS

Plaintiffs are three unrelated corporations (David K. Lindemuth Co., Inc. ("Lin-

demuth Co."), Giroux Tool and Engineering, Inc. ("Giroux Tool"), and Research Machine Development, Inc. ("RMD")) that invested in a sale/leaseback scheme involving defendants in 1982. Defendant NDT Systems, Inc. ("NDT") makes equipment for inspecting oil pipelines. (McCune Decl. ¶ 4) Defendant OTI, Inc. ("OTI") provides pipeline inspection services. (*Id.*) When the scheme began, both NDT and OTI were wholly owned subsidiaries of defendant Pengo Industries, Inc. ("Pengo"). (*Id.* ¶ 3)

In early 1982, OTI wanted to lease NDT pipeline inspection equipment. (*Id.* ¶ 5) Defendant Shannon Financial Corp. ("Shannon") acted as a broker. (*Id.* ¶¶ 2, 5) OTI informed Shannon of the equipment it wished to acquire. (*Id.*) Shannon purchased the equipment from NDT and then leased it to OTI under a Master Lease Agreement for Petroleum Service Equipment ("Master Lease"). (*Id.*) Shannon (along with SFC Leasing, Inc., which was owned by Shannon, and Michael McCune, who was president of Shannon) found investors, including plaintiffs, to buy the equipment and then lease it to OTI (hence the term "sale/leaseback"). (*Id.*) Shannon then assigned its rights and delegated its duties under the Master Lease to the investors. (*Id.*)

Plaintiffs borrowed most of the purchase price from defendant ITT Industrial Credit Company ("ITT"). (*Id.* ¶ 14) OTI's lease payments were supposed to be sufficient to meet the investor's debt service on the loan from ITT. (*Id.* ¶ 15) Pengo guaranteed the lease payments on behalf of OTI. (*Id.* ¶ 14)

The investors expected tax benefits from the transaction. (*Id.* ¶ 7) According to plaintiffs, plaintiffs also expected the lease payments to exceed the debt service. (Lindemuth (President of Lindemuth Co.) Decl. ¶ 14; Camier (President of RMD) Decl. ¶ 13) Also, the plaintiffs expected profits from the sale or release of the equipment at the end of the lease term. (Lindemuth Decl. ¶¶ 3, 8, 14; Camier Decl. ¶ 7, 13; Giroux (President of Giroux Tool) Decl. ¶¶ 3, 11)

The transactions with each plaintiff were closed in late August, 1982. (McCune Decl. ¶ 14) In March, 1983, Shannon informed plaintiffs that OTI and Pengo were having financial difficulties. (Randick Decl. exh. B) OTI defaulted on its lease payments in April, 1983. (Lindemuth Decl. ¶ 11; Camier Decl. ¶ 10; Giroux Decl. ¶ 4) Pengo did not make the payment.

Plaintiffs seek to recover the losses they incurred as a result of participating in the sale/leaseback scheme. They charge defendants with federal securities law violations, common law fraud (and related claims such as intentional misrepresentation, suppression of fact, and conspiracy to defraud), negligent misrepresentation, and breach of fiduciary duty.

Defendants Shannon, SFC, and McCune move for summary judgment on the grounds that the claims are barred by the statute of limitations, that there was no fiduciary relationship between plaintiffs and defendants, and that the investment scheme did not involve a "security" within the meaning of the federal securities laws.

Defendant ITT does not oppose the motion.

## ANALYSIS

The Court may grant summary judgment only if there are no genuine issues as to any material facts and if defendants are entitled to judgment as a matter of law. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1280 (9th Cir.1982). Further, if different reasonable inferences may be drawn from undisputed facts, the Court must draw those inferences in plaintiffs' favor. *Id.*

### I. *Statute of Limitations*

#### A. *Fraud Claims*

 The statute of limitations for the securities fraud and common law fraud claims is three years from the time plaintiff knew or should have known of the circumstances constituting the alleged fraud. *United California Bank v. Salik*, 481 F.2d 1012, 1014–15 (9th Cir.), *cert. denied*, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973). A plaintiff should have known of

the circumstances constituting the fraud if he knew of facts that would make a reasonable person suspicious of fraud, thus putting him on inquiry notice. *Miller v. Bechtel Corp.*, 33 Cal.3d 868, 874–75, 191 Cal. Rptr. 619, 663 P.2d 177 (1983). If a plaintiff has inquiry notice, he must prove that he could not have reasonably discovered the facts constituting the alleged fraud. *Id.*

■ Defendants argue that plaintiffs were on inquiry notice by September, 1982, when plaintiffs received a Form 10–Q filed by Pengo in accordance with federal securities laws. The 10–Q stated that the demand for certain petroleum related products had leveled, that Pengo was having cash flow difficulties, that Pengo had suffered a loss in the quarter ending June 30, 1982, and that profit margins had declined in the pipeline inspection unit. (Burk Decl. exh. Pengo 10–Q) Thus, defendants argue that the 10–Q should have raised plaintiffs' suspicions. If they had become suspicious and had investigated the financial health of Pengo and OTI, they would have discovered the Form 10–K filed by Pengo in accordance with federal securities laws. Defendants argue that the 10–K clearly shows that the financial picture was not what plaintiffs allege defendants represented it to be. (See Burk Decl. exh. Pengo 10–K)

In response to interrogatories, plaintiffs have stated that the magnitude of Pengo's and OTI's financial difficulties was not apparent from the 10–Q. (Burk Decl. exh. Lindemuth Co. Response to Interrogatories pp. 26–27, exh. Giroux Tool Response to Interrogatories pp. 26–27, exh. RMD Response to Interrogatories pp. 26–27) Further, the 10–Q is not entirely negative. For example, it states that the petroleum equipment manufacturing segment, led by NDT, was the most profitable segment of Pengo. (Burk Decl. exh. Pengo 10–Q) Also, Pengo's management expected to meet the cash flow problems through a divestiture program. (*Id.*) Moreover, it was not until March, 1983, when Shannon sent plaintiffs a letter explaining the financial difficulties of OTI and Pengo, that plaintiffs had reason to believe that their investments would not be profitable despite the problems mentioned in the 10– Q. (Burk Decl. exh. Lindemuth Co. Response to Interrogatories p. 27, exh. Giroux Tool Response to Interrogatories p. 27, exh. RMD Response to Interrogatories p. 27) *See McConnell v. Frank Howard Allen & Co.*, 574 F.Supp. 781, 789 (N.D. Cal.1983) (Patel, J.) (court can infer that plaintiffs should not have been suspicious because they had no reason to believe that their investments would not be profitable despite knowledge of financial difficulties).

The Court finds that a reasonable person may not have had his suspicions aroused by the 10–Q, and therefore defendants' motion with respect to the fraud claims will be denied.

### B. *Negligent Misrepresentation Claim*

■ The statute of limitations for negligent misrepresentation is two years. *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434, 1436 (9th Cir.1984); *Continental Motion Pictures v. Allstate Film Co.*, 590 F.Supp. 67, 68–69 (C.D.Cal. 1984). Plaintiffs admit they discovered the alleged wrong on or about March 8, 1983, almost three years before they filed the complaint. (Burk Decl. exh. Lindemuth Co. Response to Interrogatories p. 27, exh. Giroux Tool Response to Interrogatories p. 27, exh. RMD Response to Interrogatories p. 27) Therefore, the Court will grant summary judgment for defendants with respect to plaintiffs' Sixth Claim, for negligent misrepresentation.

### C. *Breach of Fiduciary Duty Claim*

■ If a complaint contains claims for fraud and for breach of fiduciary duty and the facts alleged support both claims, then a three year limitations period applies to the fraud claim and a four-year limitations period applies to the breach of fiduciary duty claim. *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1520–21 & n. 3 (9th Cir.1985) (applying Cal.Code Civ.Pro. § 343 to breach of fiduciary duty claim); *Robuck v. Dean Witter & Co., Inc.*, 649 F.2d 641 (9th Cir.1980). As discussed below, plain-

tiffs have alleged facts to support their claim for breach of fiduciary duty. Therefore, a four-year limitations period applies to that claim. Plaintiffs' complaint was filed within four years of the time they entered into the transactions in question and, therefore, the breach of fiduciary duty claim is timely.

In *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434, 1436–37 (9th Cir.1984), the Ninth Circuit stated that the two-year statute of limitations in California Code of Civil Procedure section 339(1) (for "an action upon a contract, obligation or liability not founded upon an instrument of writing....") applies to a breach of fiduciary duty claim. However, the Court will apply the *Davis & Cox* rule because it is subsequent to *Vucinich* and is better reasoned.

## II. Merits of Breach of Fiduciary Duty Claim

■ Defendants argue that the breach of fiduciary duty claim is meritless because there was no fiduciary relationship. California law imposes a fiduciary duty if the broker " 'for all practical purposes' " controls the account. *Leboce, S.A. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 709 F.2d 605, 607 (9th Cir.1983) (quoting *Twomey v. Mitchum, Jones & Templeton, Inc.*, 262 Cal.App.2d 690, 69 Cal.Rptr. 222, 240 (1968)). The key in determining control of the account is whether the customer can independently evaluate his broker's suggestions, based on the information available to him and his ability to interpret it. *See Follansbee v. Davis, Skaggs & Co., Inc.*, 681 F.2d 673, 677 (9th Cir.1982) (definition of control under federal securities law).

Plaintiffs have stated that they did not have experience in investment matters in general and in the oil pipeline inspection equipment market in particular, and that they relied on the agents of Shannon who held themselves out as experts. (Lindemuth Decl. ¶¶ 2, 5, 7; Camier Decl. ¶¶ 2, 4, 6; Burk Decl. exh. Lindemuth Co. Response to Interrogatories pp. 45–46, exh. Giroux Tool Response to Interrogatories pp. 44–47, exh. RMD Response to Interrog-

atories pp. 46–47) Defendants rely on provisions of the agreements signed by plaintiffs which state that plaintiffs were relying on their own investment counselors and on the fact that plaintiffs made the final decision whether to invest. (McCune Decl. exh. B (Purchase and Remarketing Agreement); Burk Decl. exh. Lindemuth Co. Response to Interrogatories p. 45, exh. Giroux Tool Response to Interrogatories p. 44, exh. RMD Response to Interrogatories p. 46)

■ Plaintiffs' asserted lack of experience gives rise to an inference that they were not independently able to evaluate Shannon's suggestions. Further, defendants have not provided evidence that plaintiffs were indeed experienced or did in fact rely on their own investment counselors. Thus, the Court will deny summary judgment on the merits of the breach of fiduciary duty claim.

## III. Definition of "Security"

Defendants argue that the transactions did not involve a security within the meaning of the federal securities laws: The Supreme Court has held that a transaction is a security if "the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946). Defendants argue that here there was no common enterprise and profits did not come solely from the efforts of others.

### A. Common Enterprise

The Ninth Circuit has defined a common enterprise as "one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties." *SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 482 n. 7 (9th Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973).

■ Defendants argue that this case does not involve a common enterprise because Shannon's income came solely from

brokerage fees, so that Shannon's fortunes were not correlated with the success of plaintiffs or OTI. However, Shannon was supposed to receive 25% of the proceeds from the sale or release of the equipment when OTI's lease term expired. (McCune Decl. exh. B (Purchase and Remarketing Agreement)) Thus, Shannon's profits, like plaintiffs', depended on the value of the equipment at the end of the lease term. This correlation in fortunes is enough for plaintiffs to avoid summary judgment on the common enterprise issue.

The Ninth Circuit has found that a sale/leaseback transaction is a security. *United States v. Jones*, 712 F.2d 1316 (9th Cir.1983). Defendants distinguish *Jones* on the ground that there, the parties equivalent to Shannon and OTI were owned by the same people. However, that feature of *Jones* was not crucial to the finding of a common enterprise. The Court merely found that the fortunes of the promoters were linked to those of the investors. Further, that distinction has no apparent bearing on whether the federal securities laws should protect the investors. Therefore, the Court will not grant summary judgment on the common enterprise issue.

### B. *Profits from Efforts of Others*

■ Defendants argue that the transaction did not involve profits within the meaning of *Howey*. The Supreme Court has held that tax benefits are not profits. *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 855, 95 S.Ct. 2051, 2061, 44 L.Ed.2d 621 (1975). However, plaintiffs have declared that they expected profits because the lease payments were supposed to exceed the debt service. Further, they expected to be able to resell the equipment at the end of the lease term for close to what they paid for it. Thus, defendant's argument has no merit.

■ Defendants also argue that the profits were not expected to come solely from the efforts of others. "Solely" means that the "efforts made by others are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *SEC v.*

*Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 482 (9th Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). Defendants argue that Shannon's efforts were insignificant because the resale price depended solely on market fluctuations. *See Noa v. Key Futures, Inc.*, 638 F.2d 77 (9th Cir.1980) (investment was not a security because profits depended solely on market price of silver). However, Shannon was obligated to use its best efforts to sell, release, or refinance the equipment so as to give plaintiffs the "maximum economic benefits available." (McCune Decl. exh. B (Purchase and Remarketing Agreement)) Shannon was also obligated to arrange and execute all the documents for the initial transaction and for the subsequent disposition of the equipment, as well as to act as the liaison between plaintiffs and the lessee (by collecting the rent payments, for example). (*Id.*) Thus, it is possible that plaintiffs' profits depended on Shannon's management skills and skills in finding a buyer and negotiating the terms of the disposition of the equipment. Such efforts by a promoter are sufficient for a plaintiff to avoid summary judgment. *See McConnell v. Frank Howard Allen & Co.*, 574 F.Supp. 781 (N.D.Cal.1983) (Patel, J.). Moreover, plaintiffs have declared that they had no interest in owning oil pipeline inspection equipment, that they considered the transactions to be an investment, and that they expected their profits to come from the efforts of others. (Lindemuth Decl. ¶ 8; Giroux Decl. ¶ 3; Camier Decl. ¶ 7) Such declarations are a factor in finding that the efforts of others requirement is met. *See Jones*, 712 F.2d at 1321–22. Thus, the Court finds that whether profits depended solely on the efforts of others is a disputed fact.

Accordingly,

IT IS HEREBY ORDERED as follows:

(1) Defendants' motion for summary judgment on the Sixth Claim for Relief of Plaintiffs' Amended Complaint is granted.

(2) Defendants' motion for summary judgment on the Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Claims

for Relief of Plaintiffs' Amended Complaint is denied.