Argued and submitted May 17, affirmed September 29, reconsideration denied
December 22, 1993, petition for review denied March 1, 1994 (318 Or 458)

ALMADEN PLAZA ASSOCIATES,
*Appellant,*

*v.*

UNITED TRUST FUND
LIMITED PARTNERSHIP,
a Delaware limited partnership;
United Trust Fund, Inc., a Florida corporation;
Sidney Domb; Fred Berliner; James Nolan;
Forrest W. Simmons; Don K. Lloyd;
William C. Bittick, Jr.; Deloitte & Touche;
George Berliner and Lillian Berliner,
*Respondents.*

(9010-06557; CA A75654)

860 P2d 289

David A. Lokting, Portland, argued the cause for appel-
lant. With him on the briefs were N. Robert Stoll, Kevin J.
Keillor and Stoll Stoll Berne & Lokting, P.C., Portland.

Garr M. King, Portland, argued the cause for respondents United Trust Fund Limited Partnership; United Trust Fund, Inc.; Sidney Domb; George Berliner and Lillian Berliner. With him on the brief were Kennedy, King & Zimmer, Portland, and Joseph A. Ingrisano and Kutak Rock & Campbell, Washington, D.C.

William S. Freeman and Cooley Godward Castro Huddleson & Tatum, San Francisco, California, join in the brief of respondents United Trust Fund Limited Partnership; United Trust Fund, Inc.; Sidney Domb; George Berliner and Lillian Berliner on behalf of respondent Deloitte & Touche.

Mildred Carmack, Portland, argued the cause for respondents Forrest Simmons, Don K. Lloyd and William C. Bittick. With her on the brief was Schwabe, Williamson & Wyatt, Portland.

Peter C. Richter, Janine C. Blatt and Miller, Nash, Wiener, Hager & Carlsen, Portland, filed the brief for respondents James Nolan and Fred Berliner.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

Plaintiff appeals the judgment entered after the court granted partial summary judgment in favor of defendants on plaintiff's securities fraud claim. ORCP 67B. The only issue on appeal is whether, as a matter of law, the sale-leaseback package by which plaintiff purchased an office building is a security under state or federal law. The trial court held that it is not, and we affirm.

The parties do not dispute the facts. Three subsidiaries of First Farwest Corporation (First Farwest) owned an office building. The book value of the building was $20,265,000; the appraised market value was $18,650,000. The building was heavily encumbered, and First Farwest wanted to sell it in a way that would remove the debt from its balance sheet without showing a loss.

On December 15, 1987, United Trust Fund, Inc. (UTFI) entered into a sale-leaseback transaction with the subsidiaries. The purchase price of $25 million was to be paid under a land sale contract, with $1.5 million down, an assumption of a $15.9 million nonrecourse deed of trust and an additional $8 million paid to the subsidiaries and amortized over 30 years. The annual debt service payments totalled approximately $2.5 million. The transaction included a 15-year "absolute net"[1] lease to the subsidiaries at above-market rent, under which the subsidiaries would pay approximately $3 million annually in rent, giving UTFI an annual net return of about $500,000. The lessees had no right to terminate the lease or to avoid any rental payments.

The agreement also gave the subsidiaries five consecutive five-year options and the option to purchase the building at the end of the initial term or any extension at no less than 11 times the annual basic monthly rent, which, under the contract, could be no less than approximately $40 million. First Farwest guaranteed the lease payments.

In 1988, UTFI assigned its rights in the agreement to United Trust Fund Limited Partnership (UTFLP), of which UTFI was general partner. UTFLP and UTFI (collectively

---

[1] "Absolute net" means that the lessees are responsible for all taxes, maintenance and operating expenses of the building.

referred to as UTF) marketed the building to potential purchasers with a brochure and other information about the business and financial condition of First Farwest. Almaden Plaza Associates (plaintiff) purchased the building as part of a like-kind exchange pursuant to section 1031 of the Internal Revenue Code. Plaintiff paid $30.5 million, paying $6.6 million in cash and assuming the $15.9 million trust deed and the payments under the $8 million land sale contract with First Farwest and its subsidiaries. Plaintiff was assigned the lessor's rights in the lease and guaranty, with no changes in the rental payments. Two of the subsidiaries were put into receivership in February, 1989, and First Farwest filed for bankruptcy in April, 1989. The rental payments ceased in November, 1989, and plaintiff ultimately lost the building to foreclosure by the holder of the first trust deed.

Plaintiff brought this action against UTF and its individual partners for, among other claims, violations of Oregon and federal securities laws. Defendants moved for partial summary judgment on the ground that the sale-leaseback package was not a security. The trial court granted defendants' motion, holding that, as a matter of law, it was not a security. Plaintiff's sole assignment of error is that the trial court erred in granting the partial summary judgment.

Both Oregon and federal securities laws define "security" to include investment contracts. ORS 59.015 (17)(a); 15 USC § 77b(1). Plaintiff argues that the sale-leaseback is an investment contract and is, therefore, a security.[2] Defendants argue that a sale-leaseback that has a fixed-rent lease cannot be an investment contract under state or federal law, because the transaction does not provide for shared profits and losses. Plaintiff argues that this sale-leaseback is an investment contract, because it provides for rents substantially above market value, making plaintiff dependent on the lessee's profitability, because no other tenant would be willing to pay the above-market rents.

---

[2] We understand plaintiff's general argument that the securities laws should be liberally construed and flexibly applied, and that the court should consider the economic realities of the transaction in determining whether something is a security, to relate to its argument that the sale-leaseback package is an investment contract, not that it otherwise fits the definition of a security.

In Oregon, a transaction is an investment contract if the plaintiff made "(1) an investment of money (or money's worth), (2) in a common enterprise, (3) with the expectations of a profit, (4) to be made through the management and control of others." *Pratt v. Kross*, 276 Or 483, 497, 555 P2d 765 (1976). That is a modification of the test, under federal securities law, adopted in *SEC v. Howey Co.*, 328 US 293, 298, 66 S Ct 1100, 90 L Ed 1244 (1946). Because the parties treat the state and federal claims together, and we have not been directed to any authority indicating any differences in the applicable tests, we will analyze the claims as one, looking to federal cases for guidance in interpreting the meaning of "investment contract" under both state and federal law. *See Computer Concepts, Inc. v. Brandt*, 310 Or 706, 801 P2d 800 (1990).

The parties do not dispute that the transaction involves an investment of money, or that the investment was made with the expectation of a profit. Defendants argue that the sale-leaseback is not an investment in a "common enterprise," and that the expected profit was not to be made through the management and control of others. A common enterprise requires some degree of connection between the investor and the promoter or a third party. Common enterprise may be "horizontal," which is the pooling of assets of two or more investors into a single investment fund. 310 Or at 714; *Hart v. Pulte Homes of Mich. Corp.*, 735 F2d 1001 (6th Cir 1984). Because plaintiff is the only investor in this case, common enterprise cannot be shown through horizontal commonality.

When there is only one investor, common enterprise may be shown through vertical commonality. The federal courts have developed various definitions of vertical commonality. In *Computer Concepts, Inc. v. Brandt, supra*, the court held that the most restrictive definition, "that the fortunes of the investor and the promoter be intertwined as to both profit *and* loss," applied to the facts of that case. 310 Or at 715. (Emphasis in original.) It therefore explicitly refused to decide whether less restrictive definitions could also be used in Oregon. 310 Or at 715 n 9. Plaintiff does not argue for application of a less restrictive test, but argues that it can meet the most restrictive test applied in *Computer Concepts,*

*Inc.* Therefore, we need not consider whether a less restrictive test might apply under different circumstances.

The only Oregon case that has considered whether a sale-leaseback transaction is a security is *Bergquist v. International Realty*, 272 Or 416, 537 P2d 553 (1975), in which the court held that a package involving an apartment complex was an investment contract rather than an ordinary commercial transaction. That case is not helpful here, however, because there was more than one investor, and the investors received undivided fractional interests. Thus, there was a common enterprise because of horizontal commonality. The court did not consider vertical commonality.

We find some assistance in federal cases that have considered whether sale-leaseback transactions are securities. For example, in *Elson v. Geiger*, 506 F Supp 238 (ED Mich 1980), a sale-leaseback included a net lease with fixed payments. The court said that "[t]he return on investment that had been promised to the purchasers was the lessee's fixed rent payment, which was totally independent of its profits or managerial expertise." 506 F Supp at 243. The court also said that the fact that the lease was a "net" lease was not dispositive.

A more recent fixed-rent sale-leaseback case included a thoughtful analysis of the common enterprise prong of the *Howey* test. In *Lavery v. Kearns*, 792 F Supp 847 (D Me 1992), the court rejected the broad test that some circuits were applying for vertical commonality and adopted the narrower one, requiring that the fortunes of the plaintiffs and the promoters be intertwined. 792 F Supp at 853. The court then considered whether the sale-leaseback agreement for the purchase of a condominium with a five-year lease was a common enterprise. The lease payments were equal to the plaintiffs' mortgage payments. The lessee was to decide the rental conditions, locate renters, and pay all costs associated with the rental, including cleaning and maintenance. There was also a buyback in the lease at a fixed amount, which placed the risk of loss on the promoters. The lease allowed for termination on 30 days' notice so that, if the market price had risen significantly, the plaintiffs could have terminated the agreement. The court pointed out that the lease fixed-payment term without any conditions on payment made it

contractually impossible for the plaintiffs to share profits or losses with anyone. It quoted from *Elson v. Geiger, supra*, 506 F Supp at 243:

> "Every lessor, in some measure, is reliant upon his commercial lessee's ability to manage the business profitably; however, such reliance will not render every commercial lease a security."

The court held that there was no common enterprise. 792 F Supp at 855.

We find those cases useful in determining whether this sale-leaseback creates vertical commonality. Plaintiff asserts that this case is different from other fixed-rent leasebacks, because the lease payments here are substantially above the market rate. Therefore, the argument goes, plaintiff is totally dependent on First Farwest's financial success, because that will allow continued payment of the above-market rents.

We do not consider the above-market rent feature of the lease one that results in an intertwining of the profits and losses of First Farwest and plaintiff. If First Farwest suffers losses, it may not be able to make its lease payments, in turn causing loss to plaintiff. However, if First Farwest is wildly successful, that extraordinary success will not inure to plaintiff; it will merely allow First Farwest to continue making the lease payments according to the lease agreement. Further, any success or failure of First Farwest does not necessarily affect the value of the property at the end of the lease term, when First Farwest could choose whether to purchase the building at the contract price. In the event First Farwest chose not to exercise the option, for whatever reason, the gain or loss in the value of the property belongs solely to plaintiff. There is no sharing of profits and, thus, no common enterprise here.

The cases on which plaintiff relies do not assist it. For example, in *McEldowney v. Allied Commercial Realty Co.*, Blue Sky L Rep (CCH) ¶ 71,864 (D Or 1982), the court applied Oregon law and held that a sale-leaseback that included the purchase of an undivided fractional interest in land that was to be developed was a security. That case does

not help our analysis, because there was more than one investor and, therefore, horizontal commonality.

In *Huberman v. Denny's Restaurants, Inc.*, 337 F Supp 1249 (ND Cal 1972), the 20-year lease agreement included both minimum monthly rental payments and an additional five percent of gross restaurant sales per month. The court pointed out that the plaintiff as owner not only had "the landlord's natural interest in the well-being of her tenant," but that the additional rent would benefit both the plaintiff and the defendant, creating a common interest in the success of the venture and thereby fulfilling the common enterprise prong of the *Howey* test.

Similarly, in *David K. Lindemuth Co. v. Shannon Financial Corp.*, 660 F Supp 261 (ND Cal 1987), the plaintiffs had purchased oil pipeline inspection equipment and leased it to a company that used the equipment. The court noted that the plaintiffs had no interest in owning the equipment, but merely in obtaining the profits from the investment. 660 F Supp at 266. The investment package included a bank loan. At the end of the lease term, the plaintiffs expected profits from the sale or re-lease of the equipment, 25 percent of which were to go to the promoter. The court held that, because both the promoter's and the plaintiffs' profits depended on the value of the equipment at the end of the lease term, their fortunes were correlated enough to survive summary judgment on the issue of common enterprise. As in *Huberman v. Denny's Restaurants, Inc., supra*, there was a specific expectation of sharing profits, which met the vertical commonality test.

That is not the case here. Plaintiff is the sole investor. The fixed-rent lease does not include any conditions to payment, and any change in the value of the property at the end of the lease term will not be shared between plaintiff and First Farwest. There simply is no intertwining of profits and losses between the promoter and investor, and therefore no common enterprise.

We recognize that, in *United States v. Jones*, 712 F2d 1316 (9th Cir), *cert den* 464 US 986 (1983), the court held that there was vertical commonality in a sale-leaseback transaction that contained elements similar to those in this case.

There, the plaintiffs purchased trailers that were leased back to a trucking company. The trailer purchases were financed through bank loans, and the loan payments were lower than the lease payments. The trucking company had a purchase option at the end of the lease. The court concluded that there was vertical commonality, and therefore the sale-leasebacks were securities. 712 F2d at 1321. We do not find that case helpful. The court's entire discussion of the issue consisted of its recognition that a common enterprise could be established by showing vertical commonality and then concluding that, "[b]ecause the proof shows that the fortunes of the investors were linked to those of [the] promoters, the requisite commonality has been established." 712 F2d at 1321.

Plaintiff argues that economic realities are central in determining whether a transaction is a security. *See Black v. Corporation Division*, 54 Or App 432, 442, 634 P2d 1383 (1981). Plaintiff points to the description of a typical sale-leaseback as a transaction that raises financing capital on a secured basis, in which the buyers pay up to 100 percent of market value for the property. *See* Maller, "Structuring a Sale-Leaseback Transaction," 15 Real Estate L J 291, 297 (1987). Plaintiff explains that financing is usually provided in a "bond-type net lease," which is an absolute net lease with an unconditional promise to pay rent. Plaintiff concedes that a typical 100 percent financing sale-leaseback would be a "commercial" transaction, but argues that the transaction in this case was atypical and is, therefore, a security.

What makes this sale-leaseback atypical, if anything, is that First Farwest sold the building at 135 percent of its value to UTF and the leaseback provided for payment of above market rents. Plaintiff argues that, because it paid an inflated price for the property, it did not really purchase an interest in the property, but rather an interest in the continued success of First Farwest, making the package more like a fixed-payment bond, which would be regulated under the securities laws. Because First Farwest would have to be very profitable to be able to pay those rents, plaintiff argues, its profits were intertwined with First Farwest's profits.

We do not find plaintiff's arguments persuasive. As the Supreme Court said in *Computer Concepts, Inc.*, the risk of nonpayment of a loan is not an investor's risk of loss,

because there is no loss of the right of return of the capital invested. 310 Or at 716. Likewise, in this case, the risk of nonpayment of the lease was not an investor's risk of loss, because plaintiff had the unconditional right to payment, even if a catastrophe demolished the building. To accept plaintiff's argument would put every sale-leaseback transaction with higher-than-market rents into the category of a security. We reject that approach. There is no common enterprise in this transaction. Therefore, it is not a security under either federal or Oregon law. The court did not err in granting partial summary judgment.

Affirmed.