Derrick LUKSCH, Karen Luksch, Karl Luksch, and Ingeborg Luksch, Plaintiffs,

v.

James A. LATHAM, Latham Resources Corporation, Capital Analysts, Inc., and Touche Ross & Co., Defendants.

No. C–84–5584 EFL.

United States District Court, N.D. California.

Dec. 22, 1987.

Thomas J. LoSavio, Low, Ball & Lynch, San Francisco, Cal., for plaintiffs.

John M. Anderson, Landels, Ripley & Diamond, Paul Renne, Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., for defendants.

## ORDER DENYING SUMMARY JUDGMENT

LYNCH, District Judge.

This securities fraud case presents the question whether, as a matter of law,

knowledge of the information contained in offering memoranda must be imputed to investors upon their receipt of such memoranda, for the purpose of determining when the investors were on constructive notice so as to start the running of the statute of limitations. As described below, the Court concludes that such knowledge should not be legally imputed to investors, except in the unusual case where a court can determine, upon review of the detailed factual circumstances and all the relevant factors, that as a matter of law a reasonable trier of fact could not fail to find that the investors either actually knew the information or should have discovered it in the exercise of reasonable diligence.

## BACKGROUND

Plaintiffs made several investments in limited partnerships formed to engage in oil and gas drilling projects. After their investments allegedly proved disastrous, plaintiffs brought this suit asserting a variety of claims including federal securities fraud, state corporations law violations, common-law fraud and deceit, negligent misrepresentation, and professional malpractice.

Defendant James A. Latham ("Latham") was a general partner and prime mover in the projects, and defendant Latham Resources Corporation ("Resources") was allegedly a shell corporation improperly used by Latham for his personal benefit. Defendant Touche Ross & Co. provided opinions for the offering memoranda for the projects and was the accounting firm for the managing general partner, Latham Exploration Company ("LEXCO"). Defendant Capital Analysts, Inc. ("Capital") was a broker dealer and investment advisor that allegedly also acted as the underwriter for the partnership offerings.

Pursuant to its Order of November 4, 1987, the Court hereby rules on defendant Capital's motion for partial summary judgment. Capital moves for summary judgment that plaintiffs' claims based on five alleged oral misrepresentations are barred by the applicable statutes of limitations. The oral misrepresentations relate to 1) the degree of risk of the investments, 2) assurances of return on the investments, 3) assurances that letters of credit would never be called, 4) assurances that contributions of voluntary assessments would involve no additional risk, and 5) the previous investment success of defendant Latham.

Capital relies solely on the ground that plaintiffs were, as a matter of law, on constructive or inquiry notice of their claims upon receipt of offering materials that directly contradicted the oral representations.[1] It essentially urges the adoption of a rule of law that knowledge of the contents of such materials must automatically be imputed to investors who receive them, without any factual inquiry into what such investors actually knew or should have discovered in the exercise of reasonable diligence.[2]

Capital's motion in support of this per se rule of imputation upon receipt is discussed below with respect to each of plaintiffs' remaining claims:

1. In the words of the moving party:
   The instant motion is limited in scope. It raises a single issue—inquiry notice—an issue which turns on whether the oral representations asserted by plaintiffs are contradicted in the offering documents they received at the time they invested. If so, as a matter of law, plaintiffs were on inquiry notice upon receipt of the written materials, and claims not brought within the applicable limitations period thereafter must be dismissed.
   Defendant Capital's Reply Memorandum in Support of Motion for Partial Summary Judgment [hereinafter Reply Memorandum] at 1. The Court has thus not been presented with and does not address any question regarding whether plaintiffs' claims are barred because they had *actual* knowledge or characteristics that caused the statutes of limitations to begin running. Given the Court's holding that the statutes did not start running as a matter of law upon receipt of the offering materials, it also does not reach plaintiffs' argument for application of the doctrine of equitable tolling, which provides for tolling of statutes where a defendant conceals the facts that would have allowed discovery of claims. *See generally, e.g., Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1415–16 (9th Cir. 1987).

2. For lack of a better term, the Court will refer to this proposal as the per se rule of imputation upon receipt.

1) Count Three for violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder;

2) Count Five for violation of state corporations law, Cal.Corp.Code §§ 25401, 25501 (West 1977);

3) Count Six for fraud and deceit, Cal. Civ.Code §§ 1572, 1573 (West 1982); *id.* §§ 1709, 1710 (West 1985);

4) Count Seven for negligent misrepresentation, *id.* §§ 1572, 1573 (West 1982); *id.* §§ 1709, 1710 (West 1985).[3]

## DISCUSSION

### A. Federal Claims

■ Because Congress has not provided a statute of limitations for section 10(b) and rule 10b–5 securities fraud claims, the courts borrow the appropriate state statute applicable to frauds generally. *E.g., Volk,* 816 F.2d at 1411–12; *Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d 873, 876 (9th Cir.), *cert. denied,* 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984); *Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1308–09 (9th Cir.1982). The appropriate statute here is Cal.Code Civ.Proc. § 338(4) (West 1982), which provides for a three-year period of limitations. *E.g., Mosesian,* 727 F.2d at 876; *Johnson,* 677 F.2d at 1308–09.

■ However, federal law determines when the statute begins to run. *E.g., Johnson,* 677 F.2d at 1309; *McConnell v. Frank Howard Allen & Co.,* 574 F.Supp. 781, 787 (N.D.Cal.1983). Federal law deems the statute to start to run on "the date plaintiff discovered the fraud or could have done so in the exercise of reasonable diligence." *Mosesian,* 727 F.2d at 877 (citations omitted). "[T]he extent to which a plaintiff used reasonable diligence is tested by an objective standard." *E.g., Volk,* 816 F.2d at 1417 (citing *Kramas v. Security Gas & Oil Inc.,* 672 F.2d 766, 770 (9th Cir.), *cert. denied,* 459 U.S. 1035, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982)).

■ Defendant Capital's motion turns on this requirement of "reasonable diligence." Capital argues in essence that reasonable diligence always requires investors to read the prospectus, and that upon receipt of the prospectus investors should therefore be deemed to have knowledge of clear contradictions between the prospectus and oral representations that have been made to the investors. Under the logic of this proposed per se imputation rule, since knowledge of such contradictions puts investors on constructive notice of fraud and starts the statute of limitations running, Capital asserts that deciding the instant motion is a simple affair: the Court need only 1) note that plaintiffs concededly received offering materials more than three years before they filed suit and 2) determine that the materials do in fact and in no uncertain terms contradict the oral misrepresentations.

Capital's principal authority in support of its motion is the recent decision of the First Circuit in *Kennedy v. Josephthal & Co.,* 814 F.2d 798 (1st Cir.1987). The *Kennedy* court considered whether investors' claims based on section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2), were barred by the statute of limitations. *Id.* at 802–03. In relevant part, section 13 of the 1933 Act bars claims not brought "within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m.

Although the *Kennedy* court recognized that "[n]ormally, the exercise of reasonable diligence would be a question of fact and not amenable to summary disposition," 814 F.2d at 803 (citation omitted), it found that where each oral representation was directly contradicted by the clear language of the prospectus plaintiffs were on inquiry notice that triggered the duty to exercise reasonable diligence. *Id.* at 802–03. The court therefore held plaintiffs' section 12(2) claims were time barred, reasoning that:

[A]s a matter of law, the exercise of reasonable diligence would require more of [plaintiffs] than merely viewing two

**3.** *See* Plaintiffs' Supplemental Brief re Claims Remaining as to Defendants at 2.

sets of statements, one of which logically cannot be true, and chosing [sic] one of those sets. We believe no reasonable fact finder could determine that [plaintiffs] exercised reasonable diligence.

*Id.* at 803.

Capital argues that the Court should apply the same reasoning and reach the same result in the case at bar. However, the Court declines to do so for a number of reasons. First, it is not clear that *Kennedy* was intended to be read so broadly. Like most of the other cases relied on by defendant, it appears to be distinguishable from the motion at bar because plaintiffs in *Kennedy* apparently had actual as opposed to merely constructive knowledge of the contents of the offering materials.[4] Although the *Kennedy* opinion unfortunately is not explicit on this point, it seems to assume that plaintiff investors actually read the prospectus as well as heard the oral representations. *See, e.g.,* 814 F.2d at 803 (plaintiffs "chose which sets of statements they wished to believe," "merely viewing two sets of statements ... and chosing [sic] one of those sets").

Second, even if some cases do intend to hold that mere receipt of a contradictory prospectus necessarily starts the statute of limitations running, the Court does not believe that the Ninth Circuit would or should adopt such a broad vision of constructive notice. For example, in *Rochelle v. Marine Midland Grace Trust Co. of New York,* 535 F.2d 523, 531–33 (9th Cir.1976), the Ninth Circuit refused to impute knowledge of proxy materials filed with the Securities and Exchange Commission ("SEC") to a company holding debentures, even though it was a sophisticated investor. In declining to do so, the *Rochelle* court explicitly invoked the fundamental policy considerations underlying the securities laws:

> We are mindful that the overriding purpose of Section 10(b) and Rule 10b–5 was to protect the purity of the securities market and that private claims for relief thereunder are a means to that end. We would impair the larger purpose if we were to expand the concept of constructive notice to defeat such claims.

*Id.* at 532–33.

The Ninth Circuit generally views the question of when a reasonably diligent investor should have discovered a claim as one appropriate for the factfinder to determine after trial rather than one for a judge to decide as a matter of law on summary judgment. Thus, in *Briskin v. Ernst & Ernst,* 589 F.2d 1363, 1367–68 (9th Cir. 1978), the Ninth Circuit rejected imputation of knowledge of the contents of trade papers to subscribers who had received them. It similarly refused to impute knowledge of an SEC registration statement to plaintiffs who denied knowledge of the filing. *Id.* at 1368. Further, the court held that plaintiffs were not necessarily put on constructive notice as a matter of law by prospec-

---

**4.** Like defendant's cases elsewhere discussed, those cited below lend little or no support for the rule defendant urges. Cases distinguishable because the court found after factual inquiry that plaintiffs had at least some *actual* as opposed to merely constructive knowledge include *Norris v. Wirtz,* 818 F.2d 1329, 1335–36 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 329, 98 L.Ed.2d —— (1987); *Townsend v. Columbia Operations,* 667 F.2d 844, 847, 850 (9th Cir.1982); *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 644 F.2d 690, 692–93 (8th Cir.1981); *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980); *Turner v. Lundquist,* 377 F.2d 44, 47–48 & n. 1 (9th Cir.1967); *Bender v. Rocky Mountain Drilling Associates,* 648 F.Supp. 330, 332–35 (D.D.C.1986); *Platsis v. E.F. Hutton & Co.,* 642 F.Supp. 1277, 1292 (W.D.Mich.1986), *aff'd,* 829 F.2d 13 (6th Cir.1987); *Salgado v. Piedmont Capital Corp.,* 534 F.Supp. 938, 949–50 (D.P.R.1981).

The only authority cited that clearly supports defendant's bold proposition is a recent district court case which unequivocally stated that "[a]n investor falls short of his duty of reasonable diligence owed to the court and adversaries when he fails to familiarize himself with the prospectus." *Hecox v. R.G. Dickinson & Co.,* [1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,237, at 96,137 (D.Kan. Jan. 12, 1987) [Available on WESTLAW, 1987 WL 14502] (citation omitted); *see also id.* at 96,135. However, the *Hecox* court provided no reasoning for its view, nor any authority save a citation to *Salgado,* a case that as noted above may be distinguishable as turning on actual notice. *Id.* at 96,137–38. Moreover, like most of the cases, *Hecox* extensively discussed such factual considerations as the plaintiff investor's sophistication, relationship with the defendant broker, and actual knowledge and suspicions. *E.g., id.* at 96,130–34, 96,138.

tuses and financial documents *even after reading them. Id.* at 1367–68. The court went on to find that:

> Once again, the definition of investor reasonableness here calls for a review of the documents in question by a trier of fact in light of all the evidence. A trial judge should not assign conclusive legal effect to such documents at the summary-judgment stage when there can be a genuine difference of opinion as to their impact on a reasonable person.

*Id.* at 1368.

Only where members of a corporate management group admitted reading a prospectus that correctly disclosed a crucial share price about which they allegedly had previously been deceived did the *Briskin* court find that summary judgment was proper to bar a claim because of the statute of limitations. *Id.* at 1369. Even so, the court rejected the argument that discovery of some misrepresentations necessarily put plaintiffs on notice that all representations were suspect, observing that "[i]t is possible that a reasonably prudent person would not suspect written representations to be false even after discovering the falsity of some oral representations." *Id.* at 1368–69. Nor could the knowledge of one shareholder be imputed to another without a factual determination that they had an agency or similar relationship. *Id.* at 1369–70.

The Ninth Circuit concluded that:

> Great as the burden may be upon a busy court, it is necessary to place before a factfinder the conflicting recollections of facts and the conflicting inferences to be drawn from such facts in this case. The conflicting assertions in this case about what a reasonable investor would have known presented issues of the type usually reserved for juries.

*Id.* at 1369; *See also, e.g., Mosesian,* 727 F.2d at 879 ("The question of what a reasonably prudent investor should have known is particularly suited to a jury determination."); *Johnson,* 677 F.2d at 1309–10 ("Because our precedent dictates that the question of notice of fraud is for the trier of fact, the party seeking summary disposition has an extremely difficult burden to show that there exists no issue of material fact regarding notice.").

As defendant correctly points out,[5] plaintiffs' dependence on the factors used in *Zobrist v. Coal–X, Inc.,* 708 F.2d 1511 (10th Cir.1983),[6] cannot be direct, because the *Zobrist* court used those factors to assess the alleged reasonable reliance of an investor, 708 F.2d at 1516–19, not to determine the issue in this case, i.e., whether knowledge of the information in a prospectus must be imputed to an investor who receives it.[7] However, the Court does not

---

**5.** Reply Memorandum at 6–8.

**6.** Memorandum in Opposition to Motion for Partial Summary Judgment at 9–13, 15.

**7.** Rather, the *Zobrist* majority imputed constructive knowledge of a private placement offering memorandum to an investor *before* considering the factors, so "that when the various [*Zobrist*] factors are considered in evaluating justifiable reliance, [plaintiff's] conduct [will] be examined as if he were aware of the warnings contained in the memorandum." 708 F.2d at 1518. While the Court need not decide the propriety of imputation in this context, it notes the force of Judge Holloway's dissent in *Zobrist:*

> [T]he majority's resolution of this issue defeats the main purpose of the securities law to protect from fraud and misrepresentation, unsoundly striking the balance in favor of the wrongdoers by penalizing a plaintiff for his neglect or recklessness in not discovering the defendants' intentional wrongs....
>
> ....

> ... The defendants are instead exonerated by a theory of constructive knowledge imputed to the plaintiff of the defendants' exculpatory boilerplate. Fashioning such a rule favoring those found guilty of knowing misconduct frustrates the important policy of the securities law and the [10b–5] Rule.

*Id.* at 1520, 1523 (Holloway, J., concurring and dissenting). The Court also observes that the Tenth Circuit itself appears to be limiting the imputation aspect of *Zobrist* by distinguishing it as holding only that imputation is proper where a *sophisticated* investor has received a private placement memorandum and "the falsity of the misrepresentations [on which he relied] is palpable." *Wegerer v. First Commodity Corporation of Boston,* 744 F.2d 719, 723 (10th Cir.1984). In *Wegerer,* the Tenth Circuit went on to *reject* a jury instruction based on this kind of imputation, apparently relying on analysis of factors strikingly similar to those the *Zobrist* majority explicitly declined to use in deciding *to* impute:

> Neither of the [plaintiffs] were sophisticated investors. Furthermore, it is uncontested that

agree that it is inappropriate here to consider the kinds of factors listed in *Zobrist*, which after all simply collected some of the relevant factors used by circuits including the Ninth to analyze the reasonableness of reliance. *Id.* at 1516–17.

Indeed, these are precisely the kinds of factors courts throughout this circuit have looked to in deciding statute of limitation cases. *E.g., Volk*, 816 F.2d at 1410–13, 1417 (considering factors including access to relevant information; concealment of fraud; opportunity to detect fraud); *Vucinich v. Paine, Webber, Jackson & Curtis, Inc. ("Vucinich I")*, 739 F.2d 1434, 1436–37 (9th Cir.1984) (knowledge and sophistication of plaintiff; concealment of fraud by reassurances of broker), *later proceeding, ("Vucinich II")* 803 F.2d 454, 459–61 (9th Cir.1986) (same; existence of longstanding business relationship; access to relevant information; existence of fiduciary relationship; generality or specificity of misrepresentations). As the *Hilton v. Mumaw* court said of its own list:

> Although this list of factors is not exclusive, it illustrates the detailed factual inquiry necessary to determine whether [the investor] did know of the alleged fraud or could have discovered it with the exercise of due diligence.

522 F.2d 588, 596–97 (9th Cir.1975) (business experience of investor; longstanding business and family relationships; investor's dependence on defendants for relevant information and advice; existence of fiduciary relationship).[8] Accordingly, any authority there may be to support adoption of the per se imputation rule urged by Capital is contrary to a wealth of Ninth Circuit law.

A final reason to reject the per se imputation rule is simply that its costs appear to be far greater than its benefits. While it is always a temptation for overburdened courts to treat issues as questions of law rather than fact so that they may be more easily decided, and the temptation is especially strong when doing so would dispose of troublesome cases or claims, mere judicial economy cannot justify the adoption of mechanical rules that disserve the policies underlying laws and, indeed, justice itself. For present purposes, these policies are:

> to provide investors with full disclosure of material information concerning public offerings of securities in commerce, to protect investors against fraud and, through the imposition of specified civil liabilities, to promote ethical standards of honesty and fair dealing.

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976) (citation omitted). It is apparent that the proposed per se imputation rule would do nothing to further these policies, and the Court believes that at least in some instances per se imputation could seriously frustrate them.

For all of these reasons, the Court believes that the Ninth Circuit is highly unlikely to adopt the far-reaching concept of constructive notice urged by defendant. The foregoing is not to say, of course, that knowledge of a prospectus should never be imputed to an investor for the purposes of the statute of limitations. After review on a proper motion for summary judgment of the detailed factual circumstances and all the factors that may be relevant, imputation as a matter of law and summary judgment that claims are barred might well be appropriate in a proper case, such as one where the investor was highly sophisticated and had initiated the transaction after receiving offering materials that glaringly contradicted oral representations made by a broker the investor had reason to distrust. But the case law of the Ninth Circuit makes clear that determination of when the statute of limitations begins to

---

the [plaintiffs] were told not to read the materials sent to them; that [their broker] told the [plaintiffs] the materials were sent by [his firm] merely to comply with a legal requirement; that the [plaintiffs] were lied to repeatedly; and that the [plaintiffs] were "badgered" by numerous telephone calls and pressured into investing.

*Wegerer,* 744 F.2d at 723.

8. While the *Hilton* court first discussed these factors with respect to Washington state law claims, it expressly relied on them to decide federal issues as well. 522 F.2d at 602.

run is normally to be decided by the trier of fact, typically the jury.

Accordingly, the Court holds that mere receipt of a prospectus containing information that contradicts material representations made orally to investors, standing alone, does not put such investors on constructive notice of section 10(b) and rule 10b–5 claims as a matter of law. Capital's motion for partial summary judgment on these claims is therefore denied as to all five alleged misrepresentations.

## B. State Claims

■ Proper analysis of Capital's motion with respect to plaintiffs' state claims is very similar to that for the federal ones. *Cf. Hilton,* 522 F.2d at 601. Like their federal claims, plaintiffs' state law claims are subject to state statutes of limitations. *E.g., Johnson,* 677 F.2d at 1308–09. The statute of limitations for plaintiffs' corporations law claims has a period of limitations of four years "or the expiration of one year after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire." Cal.Corp. Code § 25506 (West Supp.1987); *see Johnson,* 677 F.2d at 1308; *Kramas,* 672 F.2d at 770. The common-law fraud and deceit claims have a limitations period of three years. Cal.Code Civ.Proc. § 338(4) (West 1982); *see Vucinich I,* 739 F.2d at 1436;

*David K. Lindemuth Co. v. Shannon Financial Corp.,* 660 F.Supp. 261, 263 (N.D. Cal.1987). Finally, the proper statute of limitations for plaintiffs' negligent misrepresentation claims is not entirely clear. More than one district court in this circuit has stated that the two-year period of Cal. Code Civ.Proc. § 339(1) (West 1982) should apply.[9] However, the Court believes that the three-year period of section 338(4) should control.[10] Fortunately, given the Court's reasoning below, the length of the limitations period is not essential to decision on the present motion, and a determination of the issue can await another day and adequate briefing by the parties.

■ Unlike the federal claims, state law should be used to determine when the statutes begin to run. *See Hilton,* 522 F.2d at 595; *cf. McConnell,* 574 F.Supp. at 787. But California law takes a very similar view of the requirement of reasonable diligence. *E.g., Robuck,* 649 F.2d at 644; *Kramas,* 672 F.2d at 770; *see, e.g., Hobart v. Hobart Estate Co.,* 26 Cal.2d 412, 436–44, 159 P.2d 958, 971–75 (1945). California also views determination of the issue as a question of fact usually to be decided by the trier of fact. *E.g., April Enterprises, Inc. v. KTTV,* 147 Cal.App.3d 805, 833, 195 Cal.Rptr. 421, 437 (1983); *Enfield v. Hunt,* 91 Cal.App.3d 417, 419–20, 154 Cal.Rptr. 146, 147–48 (1979).

**9.** *See Lindemuth,* 660 F.Supp. at 264; *Continental Motion Pictures v. Allstate Film Co.,* 590 F.Supp. 67, 68, 69, 72 (C.D.Cal.1984). Although the *Lindemuth* court cited *Vucinich I* for support, 660 F.Supp. at 264, the Court believes the case to be readily distinguishable. In *Vucinich I,* the Ninth Circuit found that section 339(1) applied to "negligence and negligent failure to supervise," not to negligent misrepresentation. 739 F.2d at 1435, 1436. The Court notes that the difference between the torts of negligent misrepresentation and other forms of negligence is often difficult to make out or perhaps simply a matter of characterization. *See, e.g., Huber, Hunt & Nichols, Inc. v. Moore,* 67 Cal. App.3d 278, 302–04, 136 Cal.Rptr. 603, 618–19 (1977); *cf. Robuck v. Dean Witter & Co.,* 649 F.2d 641, 644–45 & n. 4 (9th Cir.1980). It seems likely that this may be the reason for the apparent divergence of opinion as to the proper period.

**10.** First, comparing plain readings of the statutes indicates that section 338(4) is more appropriate. It provides for a three-year limitations

period over "[a]n action for relief on the ground of fraud or mistake." Since negligent misrepresentation is clearly a creature of fraud and deceit, *e.g.,* Cal.Civ.Code § 1710(2) (West 1985); *Gagne v. Bertran,* 43 Cal.2d 481, 487–88, 275 P.2d 15, 20–21 (1954); 4 B. Witkin, Summary of California Law 2739–40 (8th ed. 1974), it would seem to fit naturally within section 338(4). On the other hand, section 339(1) provides primarily for "action[s] upon a contract, obligation or liability not founded upon an instrument of writing." Although the section has been described as "a catch-all for unusual tort actions not otherwise provided for," 3 B. Witkin, California Procedure 468 (3d ed. 1985), the Court does not think it appropriate or necessary to use it as such for negligent misrepresentation.

Second, while not particularly abundant, state authority indicates that section 338(4) controls. *See, e.g., Bowden v. Robinson,* 67 Cal.App.3d 705, 715–17, 136 Cal.Rptr. 871, 878–79 (1977).

Moreover, the same policy reasons against per se imputation apply with equal force respecting plaintiffs' state claims. As the Ninth Circuit noted in *Rochelle:*

We also observe that in thus confining constructive notice, we are following California's policy under which the public interest in preventing and punishing deceit and fraud is deemed to outweigh the public interest in preventing the assertion of stale claims.

535 F.2d at 533 (citations omitted).

The Court therefore believes it highly unlikely that the Supreme Court of California would adopt the far-reaching concept of constructive notice advanced by Capital. Defendant's motion for partial summary judgment on the state claims is accordingly denied as to all five alleged misrepresentations.

## CONCLUSION

For the reasons stated above, the Court finds that knowledge of the information in offering materials should not be imputed to investors as a matter of law merely upon a showing that the investors received such materials. Defendant Capital's motion for partial summary judgment is therefore denied.

IT IS SO ORDERED.