James **WENZEL** and David Crocker, Plaintiffs,

v.

**PATRICK PETROLEUM COMPANY**, Defendant.

**Civ. A. No. 88–192–JJF.**

United States District Court, D. Delaware.

Aug. 28, 1990.

Robert D. Goldberg and Christopher Battaglia of Biggs & Battaglia, Wilmington, Dela., Robert A. Holstein, Stephanie Whitman and Aron Robinson of Holstein Mack & Dupree, Chicago, Ill., for plaintiffs.

C. Stephen Bigler of Richards Layton & Finger, Wilmington, Del., Emens Hurd Kegler & Ritter, Columbus, Ohio, for defendant.

## OPINION

FARNAN, District Judge.

Plaintiffs James Wenzel ("Wenzel") and David Crocker ("Crocker") brought this action on behalf of themselves and a proposed class of plaintiffs. Wenzel and Crocker assert that the defendant Patrick Petroleum Company ("Patrick Petroleum") violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1988), and Rule 10b–5 of the rules and regulations promulgated under § 10(b) by the Securities and Exchange Commission ("SEC"). 17 C.F.R. § 240.10b–5 (1990). The violations of law allegedly occurred when the defendant withheld information about Patrick Petroleum's right to redeem warrants issued for Patrick Petroleum's common stock. The withheld information allegedly resulted in damages to the plaintiffs when the warrants were redeemed by the defendant.

In response to the plaintiffs' allegations, the defendant has brought a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). In determining whether the motion should be granted, the Court must "accept as true the facts alleged in the complaint and all reasonable inferences drawn from them. Dismissal ... is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). For the reasons stated below, the motion to dismiss will be denied.

## I.  FACTS

Both plaintiffs are residents of Utah. The defendant, a Delaware corporation with its principal place of business in Jackson, Michigan, is engaged in the development, production and sale of crude oil in the United States. In 1987, Patrick Petroleum offered to the public a securities package consisting of a bond and a warrant. The bond was a debenture of subordinated debt with a principal amount of $1,000 paying 8% interest with a due date in 1997. The warrant, which is an option to purchase the company's securities, allowed the holder to purchase one share of Patrick Petroleum's common stock at a fixed price which increased over a period of three years from 1987 through 1990.

The prospectus which offered the securities to the public disclosed that the warrants had a feature which allowed the defendant to redeem the warrants after January 21, 1988 at fifty cents (50¢) a warrant. The prospectus also revealed that the warrants were detachable from the bonds and therefore subject to be traded separately from the bonds by those who purchased the securities package in the initial public offering. In 1987, the warrants began trading separate from the bonds on the National Association of Securities Dealers' Automatic Quotation System ("NASDAQ").

As the warrants traded on NASDAQ, the warrants became transferred between those who purchased them through the initial public offering to those who acquired the warrants solely through NASDAQ. During this time, Patrick Petroleum published two press releases about the warrants and its 1986 annual report. Neither the press releases nor the annual report mentioned the feature of the warrants which allowed Patrick Petroleum to recall the warrants after January 21, 1988.

Both plaintiffs accumulated positions in the warrants through their purchases on NASDAQ. Wenzel purchased 12,000 and Crocker bought 4300, both believing that the warrants would trade until 1990. In purchasing warrants, the plaintiffs relied on the defendant's press releases. The

first press release, issued on February 27, 1987, stated:

> Patrick Petroleum Company today announced that its recently-issued 8 per cent convertible subordinated debentures were approved for listing on the New York Stock Exchange National Bond Market and will begin trading today under the symbol PPC 97. The trading symbol will be different for commonly issued retrieval or information systems.
>
> Patrick Petroleum Company recently completed an $8 million offering in the form of units, with each unit including a $1,000 principal amount 8 per cent convertible subordinated debenture due 1997 and 200 three-year warrants, each entitling the owner to purchase one share of Patrick common stock at $4.00 (first year), $4.50 (second year) and $5 (third year). The warrants began trading on the NASDAQ National Market System on January 22, 1987, under symbol PPC–DW.
>
> For further information concerning the Patrick Petroleum Company debenture or warrant securities, contact the managing underwriter for the offering, Paulson Investment Company, Inc. of Portland, Oregon.

Complaint (D.I. 1), Exhibit A.

The second press release, issued on July 8, 1987, delivered a similar message:

> Patrick Petroleum Company (PPC) today reported that its previously announced filing of a 10,000 Unit Class B convertible subordinated debenture offering with associated warrants, which has been increased to 11,300 units, was ordered effective today by the Securities and Exchange Commission. The units were priced at $1,045 for a total offering of $11,808,500. Paulson Investment Company, Inc., managing underwriter for the offering, reported that the offering is expected to be closed on July 15, 1987.
>
> Company President U.E. Patrick stated that the offering is in the form of units, with each unit including a $1,000 principal amount 8% convertible subordinated debenture due 1997 and one hundred 3-

year warrants, each entitling the owner to purchase one share of Patrick common stock at $4 (first year), $4.50 (second year) or $5 (third year). The warrants are traded via NASDAQ, under symbol PPC–DW.
>
> Each $1,000 principal amount debenture is convertible into 235 shares of Patrick Petroleum Company common stock. The Company has filed an application to trade the debentures on the New York Stock Exchange.

Complaint, Exhibit A1.

On December 27, 1987, the defendant gave notice that the Board of Directors of Patrick Petroleum wanted to redeem the warrants on January 25, 1988 for fifty cents (50¢) a warrant. The warrants had traded at least as high as $1.12 a warrant up until that time. After the redemption, the plaintiffs filed this suit on behalf of all other similarly situated "after market" purchasers, *i.e.*, those purchasers who bought the warrants after Patrick Petroleum's initial offering. Although plaintiffs make an allegation that "Plaintiffs were induced through material misrepresentations to believe the warrants would trade until 1990," Complaint ¶ 17, the substance of the complaint focuses upon the omissions of information about the warrants from the defendant's press releases and 1986 annual report.

The complaint, in describing the omissions for which the plaintiffs' complaint seeks recompense, states:

> Throughout the class period, Defendant intentionally or recklessly omitted in news releases and all other publications disseminated to the public, *except the prospectus*, that PATRICK PETROLEUM COMPANY warrants were recallable at the whim of the company. Defendant knew or should have known that investors such as the Plaintiffs would rely on the information set forth in these releases in purchasing the warrants. Defendant knew or recklessly failed to know that investors such as the Plaintiffs would not have purchased said warrants on the market if the recallable fea-

ture of the warrants had been disclosed to the public.

Complaint ¶ 23 (emphasis added). Plaintiffs thus admit that the redeemability of the warrants was disclosed in the prospectus issued at the time the bond and warrant package was offered to the public. Nevertheless, plaintiffs, denying knowledge of the information in the prospectus, claim that defendant purposely or recklessly omitted information about the warrant's redeemability from its press releases and its 1986 annual report. Such actions allegedly caused "after market" purchasers to buy the warrants and thereby defrauded them.

Instead of answering the complaint, the defendant brought a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) claiming that the plaintiffs had failed to state a claim upon which relief could be granted. In bringing the motion the defendant relies on the disclosure of the warrant's redeemability in the prospectus. The defendant argues 1) that the plaintiffs should be deemed to have "constructive knowledge" of the information in the prospectus regarding the redeemability of the warrants and 2) that the defendant had no responsibility to discuss in its press releases or 1986 annual report the feature of the warrants which allowed them to be redeemed by the defendant.

The Court thus must resolve both issues presented by the defendant's motion to dismiss. The Court therefore will turn first to the argument concerning the plaintiffs' constructive knowledge and thereafter will resolve the argument concerning the press releases and annual report.

## II.   LEGAL ANALYSIS

### A.   *Constructive Knowledge*

In order to prevail under § 10b or Rule 10b–5, a plaintiff must show that the defendant 1) made misstatements or omissions; 2) of material fact; 3) with scienter; 4) in connection with the purchase of sale of securities; 5) upon which the plaintiff relied; and 6) that reliance proximately caused the plaintiff's injury. *In re Phillips Petroleum Securities Litigation,* 881 F.2d 1236, 1244 (3d Cir.1989). The concepts underlying § 10b and Rule 10b–5 share an affinity with basic tort concepts. *See Straub v. Vaisman & Co., Inc.,* 540 F.2d 591, 597 (3d Cir.1976); *see also* W. Prosser & W. Keeton, *The Law of Torts* § 105 (5th ed. 1984) (listing elements of a fraud cause of action) (footnotes omitted). In fact, the definitions of each of the elements under Rule 10b–5 parallel in large part the definitions of those same concepts in tort law.

For example, in order to determine the materiality of an omitted fact, the Court must employ the familiar "reasonable person" test adopted from tort law: "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important". *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); *compare Basic Inc. v. Levinson,* 485 U.S. 224, 232, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988) (adopting *TSC Industries* standard for § 10(b) and Rule 10b–5 causes of action) *with Restatement (Second) of Torts* § 538(2)(a) (1977) (a matter is material if a "reasonable man would attach importance to its existence or nonexistence").

■  Similarly, proof of reliance on a material omission or a material misrepresentation establishes causation-in-fact for both the common-law tort of fraud and a securities law cause of action under § 10(b) and Rule 10b–5. *Compare Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 203 n. 24 (3d Cir.1990) ("the notion of detrimental reliance in the rule 10b–5 context is simply an application of the law's ubiquitous causation-in-fact requirement") *with Restatement (Second) of Torts* § 546 (1977) (causation-in-fact is established in fraud action if one "justifiably relies upon the truth of the matter misrepresented"). Thus, given the relationship between tort law and Rule 10b–5, it should not be surprising that a defendant's defenses in a Rule 10b–5 action are often informed by tort defenses.

In many tort cases, a defendant's defense focuses upon proving the absence of

causation. In cases involving a claim of deceit, defendants sometimes claim that a plaintiff had "actual knowledge" of the claimed fraudulent representation and therefore the plaintiff acted foolishly in relying on the statement. *See* W. Prosser & W. Keeton, *The Law of Torts* § 108 (5th ed. 1984) (reliance "seems to turn upon an individual standard of the plaintiff's own capacity and the knowledge which he has") (footnote omitted). The defendant in such cases thus argues that it was the plaintiff's unreasonable conduct, and not the defendant's alleged fraud, which caused the plaintiff injury. *Id.*

In securities law cases, the same kind of argument applies: "[i]f a plaintiff has actual knowledge of material facts, defendant's failure to disclose the same information will not create a cause of action under 10b–5 since there would be a lack of materiality." *Straub*, 540 F.2d at 596 (footnote omitted); *see also* H. Bloomenthal, *Securities Law Handbook* at 376 (1989–90 ed.) ("actual knowledge of an untruth or an omission will, of course, bar a claim even under the express remedies" found in the securities laws) (footnote omitted). In addition to preventing securities law actions where a plaintiff had actual knowledge, "[s]ome courts then took the next step and refused to allow recovery where plaintiff had 'constructive knowledge' of the withheld information." *Straub*, 540 F.2d at 596.

In this case, the defendant claims that the plaintiffs had constructive knowledge of the redeemability of the warrants because of the disclosure of that fact in the prospectus issued about the warrants. Constructive knowledge is no more than an assertion that a plaintiff lacked due diligence in investigating facts surrounding a transaction and that knowledge should therefore be imputed due to the plaintiff's failure to use "appropriate diligence or due care." *Straub*, 540 F.2d at 597. This duty of due care is imposed in securities law cases "to deter investor carelessness in securities transactions". *Id.* Thus, prior to a plaintiff claiming "reliance on a material misrepresentation or nondisclosure, he must fulfill a duty of due care in seeking to ascertain for himself the facts relevant to a transaction." *Rochez Brothers, Inc. v. Rhoades*, 491 F.2d 402, 409 (3d Cir.1974).

■ If an absence of due care is established, then a defendant may successfully show that the plaintiff cannot meet the reliance requirement imposed by § 10(b) and Rule 10b–5. *See* T. Hazen, *The Law of Securities Regulation* § 13.12 (2d ed. 1990). As the Court of Appeals for the Third Circuit has noted:

> If defendant is able to demonstrate that there was clearly no reliance, that is, that even if the material facts had been disclosed, plaintiff's decision as to the transaction would not have been different from what it was, then the non-disclosure cannot be said to have caused the subsequent loss and under ordinary principles of the law of fraud, recovery should be denied

*Rochez Brothers*, 491 F.2d at 410. Patrick Petroleum's constructive knowledge argument thus attacks the causation element of plaintiffs' case by seeking to show that plaintiffs' failure to use due care, and not the defendant's alleged fraud, caused the injury of which the plaintiff complains. *See Zobrist v. Coal–X, Inc.*, 708 F.2d 1511, 1517–18 (10th Cir.1983) (constructive knowledge prevents finding of reliance in Rule 10b–5 case).

■ The obligation of exercising due care when investing requires that the plaintiff act reasonably. The "reasonableness" test employed in analyzing due care differs from the reasonableness test used in analyzing materiality. In considering materiality, it must be determined what a *reasonable shareholder* would do. Under due diligence analysis, it must be determined whether the plaintiff acted with "the caution expected of a reasonable person *in his position.*" *McLean v. Alexander*, 420 F.Supp. 1057, 1077 (D.Del.1976) (emphasis added). The proof of due care is thus "a flexible one, dependent upon the circumstances of each case." *Straub*, 540 F.2d at 598.

In describing which facts are important to the analysis of due care, the United

States Court of Appeals for the Third Circuit has noted that:

> Such matters as fiduciary relationship, opportunity to detect the fraud, sophistication of the plaintiff, the existence of long standing business or personal relationships, and access to the relevant information are all worthy of consideration.

*Straub*, 540 F.2d at 598. In addition, the other factors may be considered, including "the nature of the misleading statements or omissions alleged ... and the subsequent actions of the parties." *Hill v. Der*, 521 F.Supp. 1370, 1389 (D.Del.1981). No one factor predominates but at a minimum the "duty of due care mandates that the plaintiff assess the information as would a person similarly possessed of his degree of business expertise." *McLean*, 420 F.Supp. at 1078.

The fact-sensitive nature of the due care inquiry eschews broad assertions about when constructive knowledge must be imposed. Accordingly, "the policy of denying all recovery to a defrauded plaintiff who was only somewhat careless or understandably trusting may be questioned." *Straub*, 540 F.2d at 597. Furthermore, requiring due care from "a plaintiff who proceeds on a theory of actual intent to defraud has been openly questioned." *McLean*, 420 F.Supp. at 1078. If a defendant has set out to defraud investors, it may ill-serve the purposes of the securities laws for a court to find the defendant insulated from liability because of an investor's foolishness. *Cf. Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310–11, 105 S.Ct. 2622, 2628–29, 86 L.Ed.2d 215 (1985) (*in pari delicto* defense not available in Rule 10b–5 action unless it can be said that plaintiff is as culpable as defendant).

In those cases where the due care defense is applicable, "the burden of proof rests upon the defendant" because the failure to meet the standard of due care "is in the nature of an affirmative defense". *Straub*, 540 F.2d at 598. This is not surprising considering that in a Rule 10b–5 cause of action, the plaintiff's "reliance" requirement implicates the same proof which the defendant must make in a due care defense. *Compare Rochez Brothers*, 491 F.2d at 410 *with Straub*, 540 F.2d at 596–98. Since a due care defense seeks to show injury not from reliance but from absence of care in the reliance, a plaintiff's proof of reliance and a defendant's claim of absence of due care will square off in an attempt to sway the trier of fact on the issue of causation. At times, however, the plaintiff is relieved of proving reliance and, in those situations, defendant's proof of the absence of due care will be the only way for the defendant to dispute causation.

In *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), the United States Supreme Court held that in certain circumstances positive proof of reliance is not a prerequisite to recovery when a plaintiff claims that his loss resulted from an omission in a statement made actionable under Rule 10b–5. *Affiliated Ute*, 406 U.S. at 153–54, 92 S.Ct. at 1472. Thus, in *Affiliated Ute* the Supreme Court "dispensed with a requirement of positive proof of reliance, where a duty to disclose material information had been breached, concluding that the necessary nexus between the plaintiffs' injury and defendant's wrongful conduct had been established." *Basic Inc.*, 485 U.S. at 243, 108 S.Ct. at 969. Accordingly, causation will be assumed in some cases because "*Affiliated Ute* makes clear that in at least some situations a presumption of reliance in favor of the rule 10b–5 plaintiff is proper." *Sharp v. Coopers & Lybrand*, 649 F.2d 175, 187 (3d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982).

The Court of Appeals for the Third Circuit has stated that there is no "steadfast rule" determining in which omission cases the presumption of reliance applies. *Sharp*, 649 F.2d at 188. Nevertheless, a recent decision from that court suggests that the presumption of reliance would be applied in cases involving "pure" omissions, *i.e.*, those cases where the plaintiff predicates liability on the duty to disclose and in which other arguments concerning misrepresentation are not presented. *Hoxworth*, 903 F.2d at 202; *see Affiliated Ute*,

406 U.S. at 153, 92 S.Ct. at 1472 (where complaint alleges "primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery").

Given plaintiffs' claims that the press releases and 1986 annual report failed to disclose the redeemability of the warrants, this case appears to involve only "pure" omissions. Thus, defendant's constructive knowledge argument ultimately implicates its duty to show plaintiffs' lack of due diligence and, as stated affirmatively, to show plaintiffs' absence of reliance. Since this is a motion to dismiss which is decided as a matter of law, the burden of proof matters little. Nevertheless, the Court will examine the defendant's constructive knowledge argument, mindful that "the due care defense should be narrowly circumscribed", *Straub*, 540 F.2d at 597, especially in those cases alleging intentional conduct and in "pure" omission cases where reliance is presumed.

### 1. *The Plaintiffs' Due Care*

■ Defendant argues that a Rule 10b–5 cause of action cannot be predicated upon information already available in the public domain. Relying on the disclosures in its prospectus, Patrick Petroleum asserts that the information concerning the redeemability of its warrants was in the public domain and, therefore, the plaintiffs cannot claim a violation of § 10(b) and Rule 10b–5 based upon a failure to disclose. In support of its argument, the defendant offers case law from various courts but not from the Court of Appeals for the Third Circuit or from courts within the Third Circuit.

For example, the defendant relies on *Myzel v. Fields*, 386 F.2d 718 (8th Cir.), *cert. denied*, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968), wherein the United States Court of Appeals for the Eighth Circuit stated that:

> [T]here is no duty to disclose information to one who reasonably should already be aware of it.... Hindsight reaction to an improvident sale by an insider to a stranger or even another insider, based upon nondisclosed facts equally known or available to both parties, ordinarily

would not be considered within the protective basis of Rule 10b–5.

*Myzel*, 386 F.2d at 736. Similarly, the defendant relies on statements such as those in *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir.1978), in which the United States Court of Appeals for the Second Circuit stated that "where information is equally available to both parties, a defendant should not be held liable to the plaintiff under the securities laws for failure to disclose."

The defendant thus seeks to impute knowledge based upon the disclosure already made in an SEC filing. The argument, while focusing on the filing, avoids all references to such matters as the plaintiffs' business expertise and other facts peculiar to the plaintiffs' case. The strict adherence to the cathartic effect of the one-time disclosure in the prospectus dominates the defendant's motion. The defendant, however, has not cited a case where the a court has held under Fed.R.Civ.P. 12(b)(6) that as a matter of law a disclosure in a prospectus always bars a Rule 10b–5 action predicated upon an omission. The defendant's reliance on cases such as *Myzel* and *Seibert* belie the sweeping nature of the defendant's argument.

Both the Second Circuit and Eighth Circuit Courts of Appeals, despite the broad statements in various cases, have made clear that the issue of constructive knowledge depends upon the facts of a plaintiff's particular case. *Myzel*, 386 F.2d at 736 n. 10; *Robertson v. Seidman & Seidman*, 609 F.2d 583, 591 (2d Cir.1979). In fact, both *Myzel* and *Seibert* were decided after a full evidentiary record had been developed. *Myzel*, 386 F.2d at 727 (after a trial); *Seibert*, 586 F.2d at 951 (summary judgment). Similarly, other cases upon which the defendant relies were decided after the court in each case had access to all the relevant facts underlying the complaint. *See Schulman v. Weil*, 466 F.Supp. 432, 433–34 (S.D.N.Y.1979) (after a trial); *Abramson v. Burroughs Corp.*, [1971–1972 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,456 at 92,254, 1972 WL 316 (S.D.N.Y. April 27, 1972) (after a trial);

*Kaplan v. Vornado, Inc.,* 341 F.Supp. 212, 213 (N.D.Ill.1971) (summary judgment); *Johnson v. Wiggs,* 443 F.2d 803, 807 (5th Cir.1971) (after a trial); *Walpert v. Bart,* 280 F.Supp. 1006, 1009 (D.Md.1967) (summary judgment), *aff'd,* 390 F.2d 877 (4th Cir.1968).

As noted previously, the Court of Appeals for the Third Circuit has indicated that imputation of constructive knowledge to a securities law plaintiff is "dependent upon the circumstances of each case." *Straub,* 540 F.2d at 597; *see also Dupuy v. Dupuy,* 551 F.2d 1005, 1016 (5th Cir.) ("diligence of the plaintiff in 10b–5 cases is judged subjectively"), *cert. denied,* 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977); *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 494 F.2d 168, 172 (10th Cir.1974) ("issue of constructive knowledge is also one of fact"). The Court therefore cannot adopt the defendant's position about the adequacy of the disclosure in the prospectus without requiring a fuller inquiry into the facts and circumstances in this case, including the "sophistication of the plaintiff[s], the existence of long standing business or personal relationships, and access to the relevant information". *Straub,* 540 F.2d at 598.

Furthermore, appellate courts which have considered constructive knowledge on facts similar to those argued here have refused to impute constructive knowledge. *See, e.g., Corwin v. Marney, Orton Investments,* 843 F.2d 194, 198 (5th Cir.) (refusing to impute constructive knowledge of information found in state records for federal securities law purposes despite that state law imposes constructive knowledge), *cert. denied,* 488 U.S. 924, 109 S.Ct. 305, 102 L.Ed.2d 324 (1988); *Briskin v. Ernst & Ernst,* 589 F.2d 1363, 1368 (9th Cir.1978) (refusing to decide as a matter of law that a reasonably prudent person would check SEC filings to verify the terms of a transaction). Similarly, district court opinions, in using a case-by-case approach similar to that employed in the Third Circuit, have refused to impute constructive knowledge about facts found in documents given to investors.

In *Luksch v. Latham,* 675 F.Supp. 1198, 1200 (N.D.Cal.1987), a defendant in a Rule 10b–5 action argued that "reasonable diligence always requires the investors to read the prospectus and that upon receipt of the prospectus investors should therefore be deemed to have knowledge of clear contradictions between the prospectus and oral representations that have been made to the investors." The court in that case rejected the defendant's attempt to have the court adopt a *per se* imputation rule. *Luksch,* 675 F.Supp. at 1201–03. Instead the court noted that it must consider various factors before imputing constructive knowledge, including access to information, knowledge and business sophistication of the plaintiff, existence of long standing business relationships and the nature of the plaintiff's allegations. *Luksch,* 675 F.Supp. at 1203. The court concluded that constructive knowledge of information in a prospectus "should not be legally imputed to investors except in the unusual case". *Luksch,* 675 F.Supp. at 1199.

In a more recent case, *Connor v. First of Michigan Corp.,* No. G89–50052 C.A., slip op., 190 WL 120644 (W.D.Mich. June 1, 1990), the plaintiffs signed "warranties" indicating 1) that they understood the risk inherent in investing; 2) that they had read a circular prepared about the securities they had purchased; and 3) that they had relied on no other representations except those contained in the circular. *Connor,* slip op. at 4. After losing money, the plaintiffs sued claiming a Rule 10b–5 violation and asserting that they had not read the documents which would have informed them of the risk they claimed caused their loss.

The defendants moved for summary judgment arguing that "knowledge of the information contained in the signed documents must be imputed to plaintiffs, so as not to reward investors who throw caution to the wind." *Connor,* slip op. at 4. The court denied summary judgment, holding that "the imputation of knowledge does not occur purely by operation of law but is a determination dependent in some measure on the facts." *Connor,* slip op. at 5. The court thereafter stated that the ultimate

question of constructive knowledge presented by defendants' motion "is answered only upon consideration of all the relevant facts and circumstances." *Connor*, slip op. at 5.

In this case, the Court, after consideration of all the relevant facts and circumstances and drawing all reasonable inferences in favor of the plaintiffs, concludes that plaintiffs' complaint should not be dismissed because of plaintiffs' lack of due care. Under the facts of this case as pled, the plaintiffs might be able to show that, despite their failure to read the prospectus, the defendant defrauded them. Further development of the facts may reveal that the plaintiffs are not sophisticated purchasers and therefore were diligent in relying upon the press releases and 1986 annual report, especially considering that the press releases indicated that the warrants allowed the holder to purchase securities at a fixed price from 1987 through 1990.

The Court therefore concludes that the fact-sensitive nature of the due care inquiry requires this Court to reject defendant's sweeping "position that ... publication of information relieves the duty to disclose." *Powell v. American Bank & Trust Co.*, 640 F.Supp. 1568, 1580 (N.D.Ind. 1986). As this Court has noted in the past, "the Court is without power to decide the due diligence question as a matter of law". *Hill*, 521 F.Supp. at 1388. Accordingly, the Court finds defendant's first argument in support of its motion to dismiss to be without merit and therefore turns to its second argument concerning the press releases and 1986 annual report.

C. *The Materiality of the Omissions in the Press Releases and the 1986 Annual Report.*

The defendant argues that omission of the information regarding redeemability from the press releases and 1986 annual report was not materially misleading and therefore the plaintiffs have no cause of action under § 10(b) and Rule 10b–5. In addressing the materiality of the press releases' omission, the defendant's argument elects to present a sweeping proposition as

law: "[p]ress releases need not contain the information required in proxy and registration materials." Defendant's Opening Brief in Support of Its Motion to Dismiss at 13 (D.I. 7). Defendant makes a similar argument concerning the 1986 annual report. Defendant's Opening Brief in Support of Its Motion to Dismiss at 14. Both contentions are unavailing as defendant's argument attempts to introduce a rigid rule about what press releases and annual reports must contain beyond the information established as necessary by the SEC.

In a recent case dealing with the duty to disclose, the United States Supreme Court stated that "[a]ny approach that designates a single fact or occurrence as always determinative of an inherently fact-specific finding such as materiality, must necessarily be overinclusive or underinclusive." *Basic Inc.*, 485 U.S. at 236, 108 S.Ct. at 985. The Supreme Court has indicated that courts "must bear in mind that the underlying objective facts, which will often be free from dispute, are merely the starting point for the ultimate determination of materiality. The determination requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those facts to him...." *TSC Industries*, 426 U.S. at 450, 96 S.Ct. at 2133.

The press releases at issue in this case contained information concerning the price at which the warrants allowed common stock to be purchased over a three-year period from 1987–1990. The press releases, however, did not contain information about Patrick Petroleum's right to redeem the warrants prior to the end of the three-year period. Although the defendant might not have a duty to include all information in press releases or an annual report which is required to be in registration materials or a proxy statement, the defendant has "a duty to disclose additional facts ... to the extent that the volunteered disclosure was misleading as to a material fact." *Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 641 n. 17 (3d Cir. 1989).

In this case, the trier of fact might conclude that the volunteered disclosures in the press releases about the price at which a holder of a warrant might purchase shares and the period of time for which the warrant allowed shares to be purchased were material disclosures. The trier of fact then might conclude that, given the volunteered disclosures, the press releases and 1986 annual report omitted information which a reasonable shareholder would consider most important, *i.e.*, that the warrants could be redeemed by the defendant prior to the expiration of the three-year period discussed in the press releases. *See Greenfield v. Heublein, Inc.*, 742 F.2d 751, 758 (3d Cir.1984) (when corporation voluntarily makes statement, "it has a duty to update that statement if it becomes misleading in light of subsequent events"), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1189, 84 L.Ed.2d 336 (1985).

Furthermore, the challenged press releases in this case touted a past transaction. Thus, the central aspect of the defendant's reliance on the adequacy of its press releases and 1986 annual report is that the information in this case was already available in the public domain. Defendant's argument, therefore, depends on the adequacy of the prior disclosure, an issue this Court has previously indicated cannot be resolved on a motion to dismiss because of its fact-specific nature.

### III. CONCLUSION

For the reasons stated above, the Court concludes that defendant's motion to dismiss must be denied. An appropriate Order will be entered.